## STATEMENT OF FACTS

Your affiant, ███████, is a Special Agent assigned to assigned to the Martinsburg, West Virginia Resident Agency of the Pittsburgh Division of the Federal Bureau of Investigation ("FBI"). During my time as an FBI Special Agent, I have worked a variety of investigations, including investigations of counterterrorism, domestic terrorism, white-collar crimes, crimes against children and violent gang offenses. Currently, I am tasked with investigating, among other things, criminal activity in and around the Capitol grounds on January 6, 2021. As a FBI Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol Building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the Capitol Building were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

1

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the Capitol Building without authority to be there.

### *Facts Specific to this Case*

Following the attack on the Capitol on January 6, 2021, videos and images from the attack were widely available to the public on the internet, and some individuals who appeared in those videos and images were described by particular monikers or hashtags on public websites.  One individual wearing red sneakers, dark pants, a grey hooded sweatshirt with the logo from Virginia Tech University, and a camouflaged hat, who was observed on the Lower West Plaza and near a police line on the Northwest Steps during the riot, was described as "#greypuller." The following image (among others) was associated with #greypuller:



*Image 1*

The FBI received multiple tips identifying #greypuller as Brian Holmes ("HOLMES"), a West Virginia resident who at the time worked at the Fire Department of Arlington County, Virginia. The FBI obtained records indicating that HOLMES worked at the Fire Department on January 4, 2021, and January 11, 2021, but did not work during any of the days in between (including January 6, 2021).

On or about July 3, 2024, I interviewed two employees at the Arlington County Fire Department, ACFD Employee 1 and ACFD Employee 2. Both employees identified the individual shown in Image 1 above as HOLMES and both individuals stated, in sum and substance, that they had worked with HOLMES for about a year or more.

Video evidence that I have reviewed, including evidence from publicly available video and videos obtained by the FBI pursuant to search and seizure warrants, shows that HOLMES's conduct on January 6, 2021 includes, among other things, the following: Body-worn camera footage shows HOLMES on Capitol Grounds wearing the same red sneakers, dark pants, grey hooded sweatshirt with the Virginia Tech University logo, and  camouflaged hat described above. In addition, this video footage shows that HOLMES was wearing distinct black and beige tactical gloves, as shown in Images 2 and 3, below.



*Image 2*



*Image 3*

From my training and experience, I believe the gloves worn by HOLMES had reinforced knuckles, and that gloves contained reinforced knuckles are commonly marketed for persons anticipating physical combat. Specifically, based on my review of certain web pages selling tactical gloves, the gloves worn by HOLMES appear similar to Oakley Men's Factory Pilot 2.0 Gloves, which are advertised on the internet as featuring "carbon fiber knuckle plates" and are described as "state-of-the-art tactical gloves for the US Military."

Video obtained by the FBI shows that at approximately 1:32 p.m., HOLMES was positioned directly in front of US Capitol Police officers who were holding a police line at the base of the Northwest Stairs, as shown in Image 4, below.



*Image 4 (HOLMES in yellow square)*

At the time, a large mob of rioters was confronting US Capitol Police and DC Metropolitan Police Officers on the Lower West Terrace. Many of the officers in the vicinity of HOLMES were wearing high visibility yellow jackets and riot gear, as shown in Image 5, below.



*Image 5 (HOLMES in yellow square; police in high visibility yellow jackets and riot gear to his right)*

Rioters near HOLMES cursed repeatedly at the police officers in front of them.  Other police on the Lower West Terrace deployed munitions to try to get the rioters to disperse. Those munitions were audible and visible in the area where HOLMES confronted the police. HOLMES did not leave the area. HOLMES remained at the front of the mob, directly facing police officers who were trying to stave off the mob, as shown in Image 6, below, in which HOLMES is seen facing US Capitol Police Officer CC.



*Image 6 (HOLMES in yellow square; Officer CC circled in blue)*

At approximately 1:48 p.m., HOLMES participated in an assault on US Capitol Police Officer CC. HOLMES then joined the mob in overrunning the police line and advancing up the Northwest Stairs. Specifically, in an open source Parler video taken from the rear angle, HOLMES is seen in front of Officer CC, who is a wearing a beanie-style hat. A man in a green jacket and blue baseball cap (subsequently identified as Daniel Scott) is to the left of HOLMES. Officer NC is to Officer CC's right, and behind them are additional police officers preventing rioters from advancing up the stairs, as shown in Image 7, below.



*Image 7 (HOLMES circled in yellow; Scott circled in red; Officer CC circled in blue)*

Scott then pushed Officer CC and Officer NC up the stairs, as shown in Image 8, below.



*Image 8 (Scott circled in red)*

As the officers pushed Scott back down the steps, Officer CC can be seen falling into the crowd. Officer NC can be seen grabbing Officer CC by his back and trying to pull him out of the crowd. At the same time, HOLMES's right hand, wearing a distinct glove, can be seen reaching toward Officer CC, as shown in Image 9, below.

8



*Image 9 (HOLMES, including gloved right hand, circled in yellow)*

A photographer who subsequently provided his photographs to the FBI captured the assault on Officer CC from another angle. In the photograph, HOLMES can be seen grabbing Officer CC as he was being pulled toward the crowd, as shown in Image 10, below.



*Image 10 (HOLMES grabbing Officer CC circled in yellow;
HOLMES' gloved right hand on Officer CC in red square)*

Following the assaultive conduct by Scott, HOLMES, and potentially others, the rioters overwhelmed the police line and ran up the stairs, which led to the Upper West Terrace of the Capitol.  A video seized by the FBI from another rioter, which was filmed at 1:49 p.m., shows a rioter throwing a Gatorade bottle at a police officer directly in front of HOLMES as HOLMES advanced up the steps. This is captured in the right side of Image 11, below.



*Image 11 (HOLMES facing officer ducking from hurled Gatorade bottle)*

HOLMES paused on his way up the stairs and appeared to taunt the officers who had come under assault by the mob, as shown in Image 12, below.



*Image 12 (HOLMES appearing to taunt police)*

HOLMES continued up the stairs and then turned back to the crowd and gestured at the crowd to follow him up the stairs and past the fallen police line, as shown in Image 13, below.



*Image 13 (HOLMES gesturing to rioters as the police line is overrun)*

Metropolitan Police Department body-worn camera footage shows that by approximately 2:15 p.m., HOLMES was again in the vicinity of the above-described assault, facing off with police officers on the Lower West Terrace.  At the time, rioters were continuing to throw projectiles at officers, verbally attack officers, and attempting to physically overrun the officers to advance on the Capitol. In the images below, a projectile thrown at police officers is shown in Image 14, and HOLMES is shown in Image 15.



*Image 14 (projectile thrown at police)*



*Image 15 (HOLMES circled in yellow)*

HOLMES approached MPD Sergeant BP and stood directly in front of him. Image 16 below, which is taken from Sergeant BP's body-worn camera at approximately 2:20 p.m., shows how close to Sergeant BP HOLMES stood.



*Image 16 (HOLMES standing directly in front of Sergeant BP)*

HOLMES tried to get even closer to the police and Sergeant BP appears to have used his left arm to physically block HOLMES from coming forward, as shown in Images 17 and 18, below.



*Image 17 (Sergeant BP holding off HOLMES)*



*Image 18 (left arm of Sergeant BP in front of HOLMES)*

Following the incident above, Sergeant BP said to HOLMES, "Walk away if you don't want to get sprayed," which I believe, from my experience investigating crimes related to the attack on the Capitol, was a reference to the Metropolitan Police Department's use of pepper spray to deter rioters who attempted to assault police officers or posed other threats to law enforcement.

HOLMES remained in front of Sergeant BP. While standing in front of Sergeant BP, HOLMES stated to Sergeant BP and the officers standing next to Sergeant BP, among other things, the following:

> "Y'all asked for this, you know that right."

> "Y'all gonna have a long day, y'all gonna have a long ass day."

> "Are you ready to speak Chinese? . . . Because that's what's going to happen, that's what's going to happen if you let these motherfuckers steal this election."

Based on the foregoing, your affiant submits that there is probable cause to believe that BRIAN HOLMES violated 18 U.S.C. §§ 1752(a)(1), which makes it a crime to knowingly enter or remain in any restricted building or grounds without lawful authority to do so.  I also submit that there is probable cause to believe that HOLMES violated 18 U.S.C. §§ 1752(a)(2), which makes it a crime to knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions.  I also submit that there is probable cause to believe that HOLMES violated 18 U.S.C. §§ 1752(a)(4), which makes it a crime to knowingly engage in any act of physical violence against any person or property in any restricted building or grounds. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that BRIAN HOLMES violated 40 U.S.C. § 5104(e)(2)(F), which makes it a crime to willfully and knowingly engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant submits there is probable cause to believe that BRIAN HOLMES violated 18 U.S.C. § 231(a)(3) and 2, which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Secret Service's protection of the Vice President and his family and the Capitol Police's protection of the U.S. Capitol.

Your affiant submits that there is probable cause to believe that BRIAN HOLMES violated 18 U.S.C. § 111(a)(1) and 2, which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or

on account of the performance of official duties, and that HOLMES did so while making physical contact with the victim of that assault and with the intent to commit another felony. Persons designated within section 1114 of Title 18 include federal officers such as USCP officers, and include any person assisting an officer or employee of the United States in the performance of their official duties.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, the 23rd day of August 2024.

_____
G. Michael Harvey, U.S. Magistrate Judge
UNITED STATES MAGISTRATE JUDGE