# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 24-MJ-271 |
| : | |
| **BRIAN HOLMES,** : | |
| : | |
| Defendant. : | |

## UNITED STATES' MOTION FOR PROTECTIVE ORDER

The United States of America hereby respectfully moves the Court for the entry of a protective order governing the production of discovery by the parties in the above-captioned case.

1. Defendant is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

2.   The investigation and prosecution of the Capitol Attack is one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence. Over 1,500 individuals have been charged in connection with the Capitol Attack. The investigation continues, and the government expects many more will be charged. While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021. The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, and conspiracy.

3.   Multiple individuals charged or under investigation are: (a) charged or expected to be charged with crimes of violence; (b) associated with anti-government militia organizations and other groups (e.g., Proud Boys, Oathkeepers, Three Percenters) that deny the legitimacy of the United States government; (c) coordinated and/or participated in the violent events which took place at the Capitol; and (d) have made statements indicating an intention to continue in similar violent endeavors until the current administration is overthrown. Dozens of the individuals charged have been detained pending trial because a judicial officer determined that the release of such person will not reasonably assure the appearance of the person, as required; will endanger the safety of any other person or the community; and/or will pose a risk of obstruction of justice.

4.   In connection with the above-described cases and ongoing investigations, law enforcement and the government have obtained and continue to obtain voluminous amounts of information and evidence relating to both charged and uncharged individuals which may be

2

discoverable pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500. The government has provided more than 8.19 million files (over 11.52 terabytes of information) to the defense in these cases through its global discovery system. These files include, but are not limited to, the results of searches of at least 840 digital devices and 463 Stored Communication Act accounts; at least 39,933 Federal Bureau of Investigation FD-302s and at least 31,056 related attachments; at least 530 digital recordings of subject interviews; and at least 210,537 redacted or anonymous tips.

5. Many of the above-described materials may contain sensitive information, such as (a) personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, as well as telephone numbers, email addresses, driver's license numbers, and similar unique identifying information; (b) information regarding the government's confidential sources; (c) information that may jeopardize witness security; (d) contact information for, photographs of, and private conversations with individuals that do not appear to be related to the criminal conduct in this case; (e) medical or mental health information, (f) sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges; and (g) tax returns or tax information. Additional sensitive materials include surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds and repair estimates obtained from the Architect of the Capitol that constitute procurement information.

6. Under the Federal Rules of Criminal Procedure, a court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" relating to discovery by entering a protective order. Fed. R. Crim. P. 16(d)(1). "The burden of showing 'good cause' is on

3

the party seeking the order[.]" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citations and alterations omitted). Once a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order. *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *Cordova*, 806 F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

7.  "Protective orders vary in range and type 'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need.'" *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). "Courts use protective orders . . . to expedite the flow of discovery in cases involving a large amount of sensitive information." *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018) (internal quotations and citations omitted).

8.  Courts also use protective orders when necessary to protect the integrity of on-going investigations. "[W]here public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order." *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013), citing *United States v. Bin Laden*, No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001) (noting that the court adopted a protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants").

9. In determining whether to issue a protective order, courts also take into account "the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.'" *Cordova*, 806 F.3d at 1090 (citations and alterations omitted). "Considering the type of crime charged helps assess the possible threats to the safety and privacy of the victim. Defendants accused of securities fraud or shoplifting, for instance, may not pose as great a danger to victims as those charged with crimes of violence." *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019). "A long record of convictions for violent crimes may suggest a substantial danger to the safety of others. Similarly, a history of failures to follow court orders may justify a more restrictive protective order." *Id.*

10. In this case, there is good cause to enter the attached proposed protective order. The entry of the order will facilitate the government's ability to provide voluminous discoverable materials expeditiously, while adequately protecting the United States' legitimate interests. The Order is reasonable: in the event of a dispute, the Order authorizes the government to remove or reduce a sensitivity designation after a discussion with defense counsel. Further, whenever the redaction of specified information will resolve the basis for which a sensitivity designation was applied, the Order provides that the United States will agree to redaction, and such redaction will render the materials at issue no longer subject to the Order. In addition, the Order explicitly exempts materials that (1) are, or later become, part of the public court record, (2) were derived directly from Defendant or that pertain solely to Defendant – e.g., Defendant's own financial records, telephone records, digital device downloads, social media records, electronic communications, arrest records, and statements to law enforcement, or (3) that the defense obtains by means other than discovery. Finally, the Order is clear that the burden for showing the need for any sensitivity designation always remains with the United States.

11.     On information and belief, a protective order substantially identical to the attached proposed order has been entered in nearly all criminal cases arising out of the Capitol Attack. Courts in this district have regularly granted similar motions by the government and entered the requested protective order over the opposition of the defense. *See, e.g., United States v. Chwiesiuk*, 21-cr-536 (CKK) (ECF No. 23); *United States v. McCaughey*, 21-cr-040 (TNM) (ECF No. 39); *United States v. Cudd*, 23-cr-068 (TNM) (ECF No. 39).

12.     Over the past several weeks, the government has repeatedly reached out to defense counsel to obtain consent for this motion without success. Defense counsel has acknowledged these contacts, but not provided a position on this motion.

WHEREFORE, to expedite the government's provision of discoverable materials, and to adequately protect the United States' legitimate interests, the government requests that pursuant to the Court's authority under Fed. R. Crim. P. 16(d)(1), the Court enter the attached proposed order.

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            UNITED STATES ATTORNEY
                                            D.C. Bar Number 481052

By:     /s/ *Mindy Deranek*
        MINDY DERANEK
        Assistant United States Attorney
        WA Bar No. 43085
        United States Attorney's Office
            for the District of Columbia
        601 D. Street, NW
        Washington, DC 20530
        (202) 252-7776
        Mindy.Deranek@usdoj.gov